**LAYNE–WESTERN COMPANY, INC., Plaintiff,**

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO LOCAL UNION NO. 513, Defendant.**

No. 80–1435C(4).

United States District Court, E. D. Missouri, E. D.

Dec. 3, 1980.

Dennis G. Collins, St. Louis, Mo., Timothy J. Verhagen, Mission, Kan., for plaintiff.

Harold Gruenberg, St. Louis, Mo., for defendant.

## MEMORANDUM

HUNGATE, District Judge.

This matter is before the Court on the petition of Layne–Western Company, Inc., for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and upon this Court's Order to Show Cause why injunctive relief should not be granted. Jurisdiction is asserted under the Labor Management Relations Act, 29 U.S.C. § 185 and 28 U.S.C. § 2201.

On November 20 and 24, 1980, a hearing was held at which all parties were afforded full opportunity to be heard, to examine and cross–examine witnesses, to present evidence on the issues and to argue evidentiary and legal issues.

After full consideration of all the pleadings and evidence filed herein, the oral arguments of counsel and testimony adduced at the hearing, and the applicable law, and being otherwise fully advised in the premises, the Court makes and enters the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff, Layne–Western Company, Inc. is a Delaware corporation maintaining its St. Louis division office in the City of Kirkwood, Missouri. Plaintiff is an employer engaged in an industry affecting commerce within the meaning of the Labor Management Relations Act, 29 U.S.C. §§ 152(2) and 152(7).

2. Defendant, International Union of Operating Engineers, AFL–CIO, Local Union No. 513, maintaining its office in the City of Brentwood, Missouri, is an unincorporated association functioning as a labor organization engaged in the representation of employees in an industry affecting commerce within the meaning of the Labor Management Relations Act, 29 U.S.C. § 152(5).

3. Engaged primarily in a water resource field operation—entailing said testing; constructing wells; selling; installing and repairing pumps, plaintiff employs equipment operators in connection with its construction projects.

4. Plaintiff recognizes and has bargained with defendant as the sole and exclusive bargaining agent of its Kirwood–based equipment operators. Since November 2, 1970, plaintiff has entered into consecutive bargaining agreements with the defendant.

5. The collective bargaining agreement entered between the parties on May 30, 1980, for a term ending on April 30, 1983, contains the following· no–strike provision:

### Article XI

*Section 1. Except as otherwise provided herein,* Employees shall not cease work, slow down, or engage in any strike or other concerted interruption of [sic] interference with the work or business of the Employer during the term of this Agreement, and the Employer shall not lock out any Employee covered hereunder during said term. [Emphasis added]

6. The parties' agreement provides for a comprehensive grievance procedure, including the following arbitration directive:

### Article X

*Section 1.* Grievances arising from differences over the application or interpretation of this contract may be initiated by an Employer or the Union or by employees subject to this agreement. If the grievance cannot be adjusted by the Union steward and the Employer's principal job superintendent, the grievance shall be referred to a business agent of the Union and an official designated by the Employer.

If a grievance cannot be resolved by the business agent and the Employer official, either the Union or the Employer may invoke arbitration by serving written notice upon the other party.

7. To secure payment of benefit trust fund contributions, the parties' agreement provides:

### Article XVI

*Section 6. Delinquency Penalties.* In the event that Employer fails to make prompt and timely reports as required and payment of the contributions due to Local 513 Pension Fund, to Welfare Fund of Engineers Local 513, to Local 513 Vacation Fund and to J.A.T.F. Fund, the Union, following seventy–two (72) hours written notice by the Fund Trustees or the Union to such delinquent Employer, may order cessation of all work covered by Employer on all jobs of Employer until such reports are made and respective contributions due are paid.

8. The parties' dispute arises from plaintiff's alleged delinquency in contributions to employee benefit trust funds for the years 1976, 1977, 1978, 1979, and portions of 1980. The funds' auditor determined that plaintiff failed to remit contributions in the sum of $26,708.47 for unreported payroll hours of equipment operators within defendant's bargaining unit engaged in soil test drilling and well drilling. By letter dated September 3, 1980, the fund coordinator notified plaintiff of the audit results with demand for payment of contributions due together with penalty and interest, totalling $43,456.92.

9. A further audit for the year 1979 resulted in a determination that plaintiff had failed to make contributions in the sum of $10,573.58. By letter dated September 9, 1980, the fund coordinator notified plaintiff of delinquent contributions and demanded payment with penalty and interest, totalling $13,384.28.

10. On September 16, 1980, defendant notified plaintiff that it would order a cessation of work on all plaintiff's projects after a lapse of seventy–two hours until all contributions due the funds were paid by plaintiff. On November 3, 1980, equipment operators employed by plaintiff ceased work by reason of the delinquency payment of contributions by plaintiff.

11. By telegram dated November 11, 1980, plaintiff made demand upon defendant for arbitration "over the issue of the

alleged Layne–Western pension liability to the Local 513 benefits fund" and advising that suit would be filed against defendant for injunctive relief on November 12, 1980, in the United States District Court for the Eastern District of Missouri.

12. On November 12, 1980, the Court denied plaintiff's request for temporary injunctive relief and set the matter for a hearing on plaintiff's request for a preliminary injunction.

### Conclusions of Law

■ 1. Pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, and 28 U.S.C. § 2201, this Court has power to exercise jurisdiction over plaintiff's request for a preliminary injunction seeking to enjoin defendant from engaging in a work stoppage and defendant from refusing to submit the issue of plaintiff's obligation to make specific payments to defendant's pension fund to binding arbitration pursuant to the terms of past and existing collective bargaining agreements.

2. Before this Court can issue a preliminary injunction, three questions must be answered affirmatively:

(a) Are the parties bound by the collective bargaining agreement to resolve the underlying dispute by arbitration?

(b) Does defendant's work stoppage violate an express or implied no–strike obligation imposed by the collective bargaining agreement?

(c) Do the circumstances of this case satisfy the traditional equitable considerations controlling the availability of injunctive relief?

*See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

3. This Court is not concerned with the merits of the underlying dispute. *See United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). This Court's function clearly is limited to determining if the parties had agreed to submit the instant dispute to arbitration. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

Article X, Section 1, of the parties' collective bargaining agreement expressly provides for arbitration of all grievances "arising from differences over the application or interpretation of this contract." Plaintiff argues that a determination of whether or not plaintiff is delinquent in contributions to the benefit funds turns on applying or interpreting contract provisions including the following:

(a) whether, under Article I, Section 3, of the collective bargaining agreement executed on May 30, 1980 contributions are due for *all* field hours worked; and

(b) whether under the agreements for the years 1974 through May of 1980, contributions were due for work in connection with soil testing and well drilling, irrespective of whether or not that work was related to heavy and highway construction.

*See United Steelworkers of America v. American Manufacturing Co., supra* 363 U.S. at 569, 80 S.Ct. at 1347, directing the trial court to order arbitration of a dispute as to the "meaning, interpretation, and application" of a collective bargaining agreement where the union claimed that the employer had violated a specific contract provision and the company took the position that it had not violated the clause.

■ Arbitration is favored in the scheme of industrial relations and will be denied only upon clear evidence that the parties so intended; all doubts should be resolved in favor of arbitration. *See United Steelworkers of America v. Warrior & Gulf Navigation Co., supra* at 582–83, 80 S.Ct. at 1352–53.

■ The parties' collective bargaining agreement establishes a detailed procedure under which the benefit fund trustees may perform an audit to determine if all monies due have been reported and paid. Since the trustees determine whether or not plaintiff is "delinquent" within the meaning of Article XVI, Section 6, plaintiff cannot invoke

arbitration provisions for union and employer conflicts to resolve any differences between the trustees and plaintiff over the interpretation and application of "delinquency" contract terms. *See Burke v. Nasland Engineering,* 95 LRRM 2606 (C.D. Cal. 1977).

Pending litigation between the trustees and the employer may determine that the trustees misinterpreted the parties' collective bargaining agreement. Nonetheless, a careful review of the parties' agreement reveals clear evidence that plaintiff is not entitled to the benefits of the arbitration provisions to resolve the delinquency dispute.

 4. Further, plaintiff cannot invoke the no–strike clause of the collective bargaining agreement to enjoin defendant's work stoppage. *See Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 382, 94 S.Ct. 629, 639, 38 L.Ed.2d 583 (1974), declining to enjoin a strike where the parties had agreed to a broad mandatory arbitration provision yet expressly negated any implied no–strike obligation.

Article XI, Section 1, of the parties' collective bargaining agreement prohibits all strikes, "Except as otherwise provided." In Article XVI, Section 6, the parties expressly provide that "following seventy–two (72) hours written notice by the Fund Trustees or the Union to such delinquent Employer, may order cessation of all work covered by Employer on all jobs of Employer until such reports are made and respective contributions due are paid."

Finding an express exception to the no–strike clause, the Court has no authority to issue a temporary injunction to enjoin defendant's work stoppage. *Compare Boys Market, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), enjoining a strike where the work dispute was subject to the grievance and arbitration clauses contained in a collective bargaining contract and holding that the strike violated the contract's no–strike provision.

 5. Absent both an enforceable arbitration provision and no–strike clause in the parties' collective bargaining agreement, the Norris–LaGuardia Act, 29 U.S.C. § 104, operates as an absolute bar to the issuance of an injunction to enjoin defendant's work stoppage. *See Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962).

Therefore, plaintiff's motion for a preliminary injunction will be denied.