LAYNE–WESTERN COMPANY, INC., Appellant,

v.

INTERNATIONAL UNION OF OPERAT-ING ENGINEERS, AFL–CIO, LOCAL UNION NO. 513, Appellee.

No. 80–2138.

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1981.

Decided June 10, 1981.

Dennis G. Collins, Larry B. Luber, Richard R. Hardcastle, III, St. Louis, Mo., Timothy J. Verhagen, Mission, Kan., for appellant.

Harold Gruenberg, Gruenberg, Souders & Levine, St. Louis, Mo., for appellee.

Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

ROSS, Circuit Judge.

Layne-Western Company, Inc. (the company) appeals the district court's [1], D.C., 503 F.Supp. 160, denial of a preliminary injunction to enjoin a strike by the International Union of Operating Engineers, AFL–CIO, Local No. 513 (the union). The strike resulted from the company's alleged delinquency in payments to the union's pension, welfare and vacation funds (the funds). The company also alleges that the district court erred in refusing to compel the union to arbitrate certain issues regarding the delinquency.

Since 1970, the company and union have entered into consecutive collective bargaining agreements. This dispute arose following an audit of the company's records by the funds. On September 3, 1980, the funds notified the company of a delinquency, including penalty and interest, in the amount of $43,456.92 for the years 1976 through May 1980. On September 9, 1980, the funds notified the company of an additional deficiency for the year 1979 in the amount of $13,384.28.

The union notified the company of its intention to strike on September 16, 1980. The union based its strike on Article XVI, Section 6 of the collective bargaining agreement which provides in pertinent part:

*Delinquency Penalties.* In the event the Employer fails to make prompt and timely reports as required and payment of the contributions due to Local 513 Pension Fund, to Welfare Fund of Engineers Local 513, to Local 513 Vacation Fund and to J.A.T.F. Fund, the Union, following seventy-two (72) hours written notice by the Fund Trustees or the Union to such delinquent Employer, may order cessation of all work covered by Employer on all jobs of Employer until such reports are made and respective contributions due are paid. * * *

On October 30, 1980, the union members employed by the company went on strike. On November 6, 1980, the company's attorney sent a letter to the union's attorney confirming a phone conversation between them. The letter stated that the union's attorney has "informed me that Operating Engineers Local 513 will not agree to submit the alleged past-due pension liability issue to arbitration under Article X of our contract." By telegrams dated November 11, 1980, the company sent demands for arbitration to both the union and its attorney. The telegram to the union demanded arbitration "over the issue of alleged Layne-Western pension liability to the Local 513 Benefits Fund." The letter to counsel for the union stated "Layne-Western again demands the pension laibility [sic] dispute be submitted to arbitration under Article X of the Contract. An issue exists as to 'which hours, if any' Layne-Western owes to the Fund."

On November 12, 1980, the company filed an action under § 301 of the Labor Management Relations Act seeking a temporary restraining order, a preliminary injunction, a permanent injunction, an order to compel the union to arbitrate and damages in the amount of $100,000.

The district court refused to issue a temporary restraining order but ordered that a show cause hearing be held on the request for a preliminary injunction.

On December 3, 1980, the district court denied the preliminary injunction and refused to compel arbitration. On the issue of arbitrability, the district court noted that Article X, Section 1 of the parties' collective bargaining agreement provides for arbitration of grievances "arising from differences over the application or interpretation of this contract * * *." The company asserted that under its interpretation of the contracts for 1974 through May 1980 there was no delinquency. Specifically, the company contended that under the contracts in question contributions were due only for soil testing and well drilling performed in connection with heavy or highway construction.

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

The district court rejected the company's contention that an arbitrable issue was presented because Article XVI, Section 6 of the contract gave the funds' trustees the right to determine whether an employer is "delinquent." The district court stated that "[p]ending litigation between the trustees and the employer may determine that the trustees misinterpreted the parties' collective bargaining agreement."

The district court also found that it had no authority to issue a preliminary injunction to halt the strike. The no-strike clause in the contract, Article XI, Section 1, provides:

> Except as otherwise provided herein, Employees shall not cease work, slow down, or engage in any strike or other concerted interruption or interference with the work or business of the Employer during the term of this Agreement, and the Employer shall not lock out any Employee covered hereunder during said term.

(Emphasis added.)

The district court held that Article XVI, Section 6, was an expressed exception to the no-strike clause and, therefore, the Norris-LaGuardia Act, 29 U.S.C. § 104, barred the issuance of an injunction.

## I. Arbitrability.

At the outset, it should be noted that the company's characterization of the issue or issues it wishes to arbitrate have, perhaps purposefully, varied widely.[2] We assume that the company would like the "total" dispute arbitrated and secure a decision as to the total amount, if any, owed the funds.

While we find an arbitrable dispute, our decision is not as far reaching as the company may desire.

The company argues that *this* delinquency is totally based on an erroneous interpretation of "contributions due" and the issue of which contributions are due is a matter of contract interpretation. Specifically, the company's brief noted:

> It warrants repeating that a determination by the Trustees of the Appellant's delinquency is impossible without first interpreting and applying the collective bargaining agreements between Layne-Western and Local 513 to determine the types of work performed by Local 513 members employed by Layne-Western for which Appellant is bound to contribute to the Benefit Funds.

The company contends that from 1974 through May 1980 it was not obligated to contribute to the funds for well drilling and soil testing work unless the work was performed in connection with heavy or highway construction.

In *Farmer v. Fisher*, 586 F.2d 1226 (8th Cir. 1978) this court found that the question of "whether contributions are owed" called for an interpretation of the collective bargaining agreement and thus an arbitrable issue was present. *Id.* at 1229. This court based its decision on the language of the trust agreement which referred to "contributions specified in the collective bargaining agreements." *Id.* at 1227.

The trust agreements in this case also make reference to the "contributions" or "deductions" required under the terms of

2. The company demands for arbitration to the union stated the issue as "alleged past-due pension liability" and "'which hours, if any' Layne-Western owes to the Fund." The company's complaint in the district court requested arbitration of the parties' "present differences, controversies and disputes, whatever they may be * * *." The district court summarized the issues which the company wishes to arbitrate as follows:

(a) whether, under Article I, Section 3, of the collective bargaining agreement executed on May 30, 1980, contributions are due for *all* field hours worked; and

(b) whether under the agreements for the years 1974 through May of 1980, contributions were due for work in connection with soil testing and well drilling, irrespective of whether or not that work was related to heavy and highway construction.

On appeal, the company argues that there is an arbitrable question as to the types of work for which the company is obligated under the contract to make contributions to the funds. The company characterizes this issue as a "delinquency dispute."

the collective bargaining agreement.[3] As we noted in *Farmer. v. Fisher, supra,* 586 F.2d at 1229–30:

> Mere origination of the dispute in the collective bargaining agreements would not in every case preclude its characterization as a matter of trust administration. Similarly, origination in the trust declaration, would not alone render the matter one of trust administration. Courts have recognized a distinction between ordinary matters, which constitute trust fund "administration," and extraordinary matters, which do not. *Ader v. Hughes,* 570 F.2d 303, 307 (10th Cir. 1978); *Bath v. Pixler,* 283 F.Supp. 632, 635 (D.C.Colo.1968).

*See also Central States, Southeast and Southwest Areas Pension Fund v. Howard Martin,* 625 F.2d 171, 172 (7th Cir. 1980).

■ We hold that the issue of whether contributions are due to the funds for certain types of work performed under the collective bargaining agreements in effect from 1974 through May 1980, presents a question of interpretation of the collective bargaining agreement and therefore an issue for the arbitrator. However, following the arbitrator's determination as to the types of work for which contributions are due, the question of whether monies due have been reported and paid is for the funds' trustees to determine. Thus, we agree with the district court to the extent that any final determination of a delinquency is for the funds' trustees based on the arbitrator's determination and on their power to audit the company.[4]

The interpretation of the types of work for which contributions are due under the contracts is not a matter of ordinary trust fund administration. But, the determination of whether those contributions have been made by the company is, based on our interpretation of the contracts and trust agreements, a matter of ordinary trust fund administration. Stated another way, if the arbitrator adopts the company's position as to the types of work for which contributions were due, the trustees of the funds will still retain the power to determine whether or not a delinquency exists under the arbitrator's interpretation of the contract. *See Central States, supra,* 625 F.2d at 172.

3. The union's pension fund trust indenture provides:

> WHEREAS, the terms and provisions of a collective bargaining agreement between the parties hereto in force and effect as of the date hereof provides and requires, among other things, for payment into the Local Union 513 Pension Fund established hereunder, of certain contributions by Employers for the purpose of providing pension benefits for certain employees employed by them, * * *.

The union's welfare fund trust indenture provides:

> WHEREAS, the terms and provisions of a collective bargaining agreement between the parties hereto in force and effect as of the date hereof provides and requires, among other things, for payment into the Welfare Fund of Engineers Local 513 established hereunder, of certain contributions by Employers for the purpose of providing health and welfare benefits for certain employees employed by them, * * *.

The union's vacation plan trust agreement provides:

> WHEREAS, the terms and provisions of collective bargaining agreements between the Parties hereto in force and effect as of the date hereof require and provide for certain deductions from wages of Employees represented by the Union by their Employers to be paid as vacation pay in accordance with a Vacation Plan developed and established by said Parties, * * *.

4. Article XVI of the collective bargaining agreement is entitled "Benefit Fund Contributions" and that article provides, in pertinent part:

> *Section 1. Benefit Trust Fund Contributions* * * *.
>
> The Trustees for the Trust Funds incorporated by reference in this Agreement have the authority to audit the appropriate payroll records of any Employer. Written notice by certified mail from the Trustees requesting an audit shall be given to the Employer. Such record will be made available to the auditor within thirty (30) days after notification. Failure to do so within thirty (30) days of demand, the Union may shut down each job of the Employer until compliance is met.

Article XVI also contains three clauses which for each fund provides:

> The reporting, payment and administration of such contributions shall be governed by the terms of the Trust Agreement creating the [funds] and the rules and regulations adopted thereunder.

In conclusion, the district court should order speedy arbitration of this arbitrable dispute.

## II. Preliminary Injunction.

The company argues that under *Boys Markets v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) the presence of an arbitrable dispute required the issuance of a preliminary injunction to halt the strike. In contrast, the union argues that regardless of whether there is an arbitrable issue, the union had the right to strike over the "delinquency" under an expressed exception to the no-strike clause.

In *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), the Supreme Court recognized that an agreement to arbitrate is "analytically distinct" from the issue of whether there is an obligation not to strike. *Id.* at 382, 94 S.Ct. at 639. The court in *Gateway Coal* noted that usually the issues are linked, but that there could be an "explicit expression" of an intention not to link the issues. *Id.* at 382, 94 S.Ct. at 639. Similarly, in *Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976) the Court stated that when certain types of strikes are "expressly excluded" from the no-strike clause there is "no possible basis for implying from the existence of an arbitration clause a promise not to strike * * *." *Id.* at 408, 96 S.Ct. at 3148. Even in *Boys Markets* the Court cautioned that their views should not be construed as a finding "that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance." *Boys Markets, supra*, 398 U.S. at 253-54, 90 S.Ct. at 1593-94.

In this case, there is clearly an expressed exception to the no-strike clause for disputes regarding delinquencies to the funds. But whether such exception can be relied on when an underlying issue regarding the delinquency is arbitrable is not clear. This question can only be answered by determining the intention of the parties to the contract.

The authority to issue a preliminary injunction requires a finding that "the union was under a contractual duty not to strike." *Gateway Coal Co., supra*, 414 U.S. at 380, 94 S.Ct. at 638. Based on the peculiar facts of this case, we cannot say whether *this* arbitrable issue triggered a contractual duty not to strike. The issue is one which calls for an interpretation of the contract as to the meaning of the exception to the no-strike clause and the no-strike clause itself and is the type of issue the parties have by contract agreed to submit to arbitration. It is also the type of issue the Supreme Court found did not warrant injunctive relief in the *Buffalo Forge* decision.

Therefore, we affirm the district court's denial of injunctive relief for the reasons herein stated. The district court should order this issue submitted to the arbitrator and further direct that the remaining claims of the company for breach of contract and damages should be stayed pending the arbitration of both issues. *See Drake Bakeries v. Bakery Workers*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).

Reversed in part, affirmed in part, and remanded for disposition not inconsistent with this opinion.