**ELEVATOR MANUFACTURERS' ASSOCIATION OF NEW YORK, INC., and Otis Elevator Company, Plaintiffs,**

v.

**LOCAL 1, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS (an unincorporated association), Karl Stork, Thomas Connelly, and all others conspiring, acting in concert or otherwise participating with them or acting in their aid or behalf, Defendants.**

No. 82 Civ. 0149 (KTD).

United States District Court,
S. D. New York.

Feb. 10, 1982.

Putney, Twombly, Hall & Hirson, New York City, for plaintiffs; Charles O. Strahley, New York City, of counsel.

Markowitz & Glanstein, New York City, for defendants; Richard H. Markowitz, New York City, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

This is an action to enjoin an alleged concerted work stoppage or slowdown by elevator repairmen. The pertinent facts in this case are not disputed by the parties. Plaintiff Elevator Manufacturers' Association of New York, Inc. ["EMANY"], an employer association consisting of various elevator construction and maintenance companies, and the Otis Elevator Company, ["Otis"], a member of EMANY, seek a preliminary injunction against Local 1 of the International Union of Elevator Constructors ["Local 1"] from encouraging or engaging in a complete refusal to work any overtime. Local 1, a labor organization with offices in New York City, is the authorized representative of the mechanics and helpers employed by the members of EMANY, including Otis, in the greater New York City Metropolitan area. EMANY and Local 1 have entered into a collective bargaining agreement ["agreement"] which is effective from July 1, 1981 until June 30, 1984. This agreement expressly forbids strikes by employees and provides for a grievance-arbitration procedure to settle any difference or dispute between the parties regarding the application and construction of the agreement itself.

This lawsuit centers on a provision of the agreement which concerns overtime for the employees. Section VII(E) of the agreement now provides in pertinent part:

.　　.　　.　　.　　.

2. It is agreed that, in the mutual interest of the Employer, Employee and the public, the employee has a special obligation to accept assignment to an emergency callback during any hour of any day. It is understood that the obligation on the part of the service men to make overtime callbacks is not intended to impose a mandatory obligation but simply a mutual recognition of responsibility.

.　　.　　.　　.　　.

Pursuant to the collective bargaining contracts, Otis mechanics have for many years performed emergency service and repair work on an overtime basis when asked to do so by Otis. Otis maintains a work schedule at its East Orange, New Jersey office for those mechanics who have indicated that they wish to earn additional compensation by performing this emergency work. When an emergency arises after normal business hours, Otis contacts the mechanic who is on standby for that evening, holiday or weekend, and the mechanic then travels to the customer site where the emergency exists. It is uncontroverted that no individual employee is obligated to work on emergency calls. Plaintiff does assert, however, that for the past 50 years Otis has rendered emergency service by assigning work to mechanics who volunteer. According to Otis, it is obligated under numerous contracts it has with customers to service the customer's elevators and escalators on a regular basis and to make emergency service and repair calls promptly after notification that such emergency service or repair is needed.

The general importance of elevator repair services is a fact worthy of judicial notice. Virtually anyone who has worked at the United States Courthouse at Foley Square knows the unnerving feeling of standing in a motionless elevator between floors waiting for emergency service. Of course, the importance of reliable elevator service is even more pronounced in other public facilities such as hospitals. At industrial plants, prolonged interruption in elevator service could result in costly interruption of production. In short, the importance of reliable emergency elevator repair service has grown concomitant with modern society's dependence on the elevator.

Sometime in October, 1981, Thomas Connelly, the Local 1 Shop Steward at Otis,

complained that mechanics who were available for emergency work were not receiving enough assignments. Otis responded that they had been screening customer requests for emergency service in order to insure that a true emergency exists. If the customer's problem could wait until the next regular business hours then Otis would not send out a mechanic. Not satisfied with this response, Local 1 informed its members that they should not volunteer for overtime callbacks. Otis claims that none of its mechanics have answered an emergency overtime call in New Jersey since December 24, 1981. As a result, Otis has been using supervisory employees to answer overtime calls. On January 5, 1981, EMANY sent a telegram to Local 1 demanding an end to the Local 1 members' refusal to work overtime. This request proved unavailing and the instant lawsuit ensued.

The issue here is whether the actions of Local 1 may be enjoined despite the anti-injunction provision of the Norris-LaGuardia Act, 29 U.S.C. § 104.

Plaintiff argues that it is entitled to such an injunction by virtue of the narrow exception to the Norris-LaGuardia Act carved by the Supreme Court in *Boys Market, Inc. v. Retail Clerks, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In *Boys Market*, the union demanded that the employer cease using supervisory employees for certain tasks. The union struck when the demand was rejected. The collective bargaining agreement between the parties contained an arbitration clause and a no-strike provision. The Supreme Court held that the Norris-LaGuardia Act's prohibition against enjoining strikes does not apply where there exists mandatory arbitration procedures to settle the issue over which the union is striking.

In the instant case, plaintiff urges that the Local 1 members' refusal to work overtime because of the employer's screening of emergency calls constitutes a strike in express violation of the contract's no-strike clause. The issue of the employer's obligation not to screen emergency calls is clearly arbitrable. The plaintiff argues that consistent with *Boys Market* the union should be enjoined from refusing work pending arbitration. Otherwise, it is alleged Otis will not be able to service the emergency needs of its customers. Otis is presently utilizing supervisory personnel whose numbers may in a serious emergency prove inadequate.

Plaintiffs' argument is persuasive but for one unresolved issue in this case: Is the union on strike when it refuses overtime work? Local 1 argues that they have no grievance at this time over which they wish to arbitrate. This position appears somewhat illusory as there is little doubt that the union is encouraging the refusal of overtime work because they disagree with Otis' method of assigning work. Local 1 argues more convincingly, however, that the contract expressly avoids imposing a "mandatory obligation" on employees to perform overtime work, and as a result, the employees' refusal to work is not prohibited by the contract. Thus, defendants contend these employees are not on strike.

Otis argues that although no individual employee is obligated to work overtime, the contract implicitly requires that some employees will be available. Otis' argument is corroborated by the previously uninterrupted overtime service that has been provided by union members at least since the inception of the present collective bargaining agreement. Otis would have this court conclude that a total refusal to work overtime should thus be considered a strike. This conclusion is similar to that reached by Judge Bauman in a 1972 case between the same parties.

In *Elevator Manufacturers Association of New York v. International Union of Elevator Constructors, Local 1*, 342 F.Supp. 372 (S.D.N.Y.1972), ["Elevator Manufacturers"] Local 1's total refusal to work overtime was deemed a strike despite a provision in the then existing contract which stated that "Overtime shall not be worked except when unavoidable." The union's willingness to provide overtime for twenty-nine months evidenced that such work was contemplated by the contract. This decision by Judge

Bauman was expressly limited to a finding that a strike existed and did not purport to decide how much overtime constitutes "unavoidable overtime." 342 F.Supp. at 374. It was left to the arbitrator to decide what "unavoidable" meant.

■ Judge Bauman's decision is not binding on this court. The collective bargaining contract has been changed by the parties since that time. The reasons for this change of the bargain are not clear.

■ Moreover, particularly in light of this change, the facts presented in this case do not clearly show whether or not the employees are on strike. The employees have not refused all work, only overtime work. Whether the employees' refusal to work overtime constitutes a strike now requires an interpretation of paragraph 2 of Section VII(E) of the present collective bargaining agreement. The language in that paragraph is unusually ambiguous. Why the contract was changed from its 1972 terms which obligated the employees to perform "unavoidable" overtime work to its present terms which impose merely a "special obligation" to perform all overtime work is unknown to this court. For me to attempt to interpret the ambiguous language in the existing contract, even for the limited purpose of determining whether there is a strike would ignore the Supreme Court's decision in *Buffalo Forge Company v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976).

■ In *Buffalo Forge*, a case decided after Judge Bauman rendered his opinion in *Elevator Manufacturers*, the Supreme Court held that the *Boys Market* rationale only applies where a strike is over an arbitrable dispute. The court affirmed its refusal to enjoin a sympathy strike by the union when it did not involve an arbitrable issue and rejected the employer's argument that an injunction was proper because the issue of whether the sympathy strike violated the no-strike clause in the contract was itself arbitrable. If the employer's argument was accepted, the enjoining court would have to interpret the meaning of the contract provisions. Such judicial interpretations were not bargained for by the parties when they set up the arbitration process. Arbitrators are to address the merits of a dispute untainted by interpretations of the contract from this court. 428 U.S. at 412, 96 S.Ct. at 3149. An injunction was not warranted in *Buffalo Forge* because "[t]he [sympathy] strike had neither the purpose nor the effect of denying or evading an obligation to arbitrate or of depriving the employer its bargain." 428 U.S. at 408, 96 S.Ct. at 3148.

■ One of the arbitrable issues in this case concerns the legality of the union's actions under paragraph 2. Interpreting this paragraph would be similar to the exercise forbidden by *Buffalo Forge*. It is true that another arbitrable issue may underly this dispute: namely the employer's improper screening of emergency calls from customers. I am faced with a situation now, however, where the employer has initially declared the union in breach of their obligation to work overtime. Without addressing the motivations behind the union's actions, this raises a preliminary issue which the parties have agreed to arbitrate. If I were to decide the issues presented, I would be making a finding which the parties bargained to have an arbitrator decide. *See Layne-Western Company v. International Union of Operating Engineers*, 650 F.2d 155, 159 (8th Cir. 1981); *Design & Manufacturing Corporation v. International Union, etc.*, 608 F.2d 767, 769 (7th Cir. 1979), *cert. denied*, 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980). Should the arbitrator decide that the union is violating their "special obligation" to perform overtime work, an injunction may be appropriate. Until then the general provision of the Norris-LaGuardia forbidding injunctions will prevail.

Motion for a preliminary injunction is denied.

SO ORDERED.