**AMALGAMATED LOCAL NO. 55, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, Plaintiff,**

v.

**METAL AND ALLOY DIVISION OF SILVER CREEK PRECISION CORPORATION, Defendant.**

No. Civ-74-397.

United States District Court,
W. D. New York.

June 19, 1975.

---

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y. (Richard Lipsitz, and Stuart M. Pohl, Buffalo, N. Y., of counsel), for plaintiff.

Moot, Sprague, Marcy, Landy, Fernbach & Smythe, Buffalo, N. Y. (John J. Phelan, Buffalo N. Y., of counsel), for defendant.

CURTIN, Chief Judge.

This is an action brought by Amalgamated Local No. 55 pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to compel arbitration under a collective bargaining agreement. The agreement, which was executed in 1968 and amended on September 1, 1972,

contains an arbitration clause requiring all issues regarding interpretation or application of any term of the agreement upon which the parties cannot agree to be submitted to the office of the New York State Board of Mediation for a panel of nine names, from which the name of an arbitrator could be chosen to arbitrate the dispute.[1] The issue the plaintiff seeks to submit to arbitration stems from defendant's alleged failure to contribute to an employee welfare fund, as required by Article XI, Section 5 of the amended agreement.[2] The case is now before the court on plaintiff's motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The facts in this case are not in dispute. Defendant corporation terminated its manufacturing operations on or about August 13, 1973, at which time employees represented by plaintiff were laid off.[3] On September 14, 1973, plaintiff union informed defendant that an arrearage in its contributions payable to the Local 55 UAW Welfare Fund, pursuant to Article XI, Section 5 of their collective bargaining agreement, had developed. Plaintiff received no response and, therefore, again notified defendant of the arrearage on February 27, 1974. At that time plaintiff also stated that if the amount was not paid within ten days, the plaintiff would submit the dispute to arbitration. Further letters followed in March and April 1974, reiterating plaintiff's intention to arbitrate the dispute. Thereafter plaintiff contacted the New York State Mediation Board on March 26, 1974 and requested that a panel of nine names be submitted to the parties from which an arbitrator could be selected pursuant to their agreement. On April 11, 1974, plaintiff was informed by both the Mediation Board and defendant's attorney that defendant refused to arbitrate the dispute. This action was then begun on August 16, 1974.

The precise question raised by the plaintiff's summary judgment motion is whether the defendant's alleged failure to pay into the union's welfare fund is an arbitrable dispute subject to the arbitration clause. In deciding this

---

1. Article VI, § 4 of the collective bargaining agreement, as amended, provides:

   4. If the third step should fail to secure satisfactory settlement, the grievance may be submitted to the office of the New York State Board of Mediation for a panel of nine (9) names.

   (a) In the event that an arbitrator is required, he shall be selected from the arbitration panel provided either by mutual agreement or by each party alternately striking off a name from the panel. The remaining name shall be the arbitrator who shall arbitrate the grievance or grievances pending.

   (b) The arbitrator shall fix and notify the parties of the time and place for arbitration of the grievance.

   (c) Any issue involving the interpretation or application of any term of this agreement shall be initiated by the Union directly at step 3. Upon the failure of the parties to agree, the Union may then appeal the issue to arbitration for a decision.

   (d) The decision of the arbitrator shall be final and binding upon both parties, but he shall have no power either to add to, subtract from or modify any of the terms, conditions or limitations of this agreement or any agreement made supplementary hereto . . . .

2. Article XI, § 5 of the collective bargaining agreement, as amended, provides:

   5. *INSURANCE:*

   (a) Effective February 1, 1972, the Company shall continue as a contributing employer to Local 55, UAW Welfare Fund which has been established under an Agreement and Declaration of Trust dated September 1, 1958 which said Agreement and Declaration of Trust the Company hereby ratifies and is deemed to be a part of this Agreement. The Company will contribute the cost of $26.46 for each single, active working employee and $52.62 for each married, active working employee to the Local 55, UAW Welfare Fund including employees on sick leave not to exceed twelve (12) months for any one sick leave with an initial master list and subsequent monthly supplemental list for those for whom premiums have been paid by the fifth (5th) day of each calendar month . . . .

3. Defendant, in ¶6 of his answer, filed October 8, 1974, denies that the plaintiff's employee members were laid off.

question, the role of the court under § 301 of the Labor Management Relations Act has been narrowly limited to a consideration of "whether the reluctant party did agree to arbitrate the grievance." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Furthermore,

> [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. *Id.* at 582–83, 80 S.Ct. at 1353.

In another case, *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L. Ed.2d 1403 (1960), decided on the same day as the above cited case, the role of the court was similarly delineated:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

Under the standards set forth above, and reiterated in other Supreme Court cases,[4] this court must therefore initially make a determination whether the company contractually bound itself to arbitrate. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct 909, 11 L.Ed.2d 898 (1964); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Necchi v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693 (2d Cir. 1965), *cert. denied*, 383 U.S. 909, 86 S.Ct. 892, 15 L. Ed.2d 664 (1966). After this primary determination has been made, the decision of whether or not arbitration should be compelled can be made.

▮ Plaintiff has submitted both the text of the arbitration clause, Article VI, Section 4, and the insurance provision, Article XI, Section 5, contained in the September 1, 1972 contract, as amended.[5] Defendant has acknowledged both the existence of this contract and the provisions in question. An issue has clearly arisen regarding contributions to the welfare fund.[6] The arbitration clause, in concise, unambiguous language, requires that all disputes regarding any such term of the agreement must be submitted to arbitration. Since defendant has not given the court any positive assurance that the insurance issue is *not* covered by the arbitration clause, it is clear that the company has agreed to arbitrate disputes such as this. *John Wiley & Sons, Inc. v. Livingston, supra.*

▮ Defendant has argued that plaintiff's motion for summary judgment directing defendant to submit to arbitration should not be granted because plaintiff has repudiated its right to arbitration. This repudiation occurred, according to defendant, through plaintiff's filing of a criminal informa-

---

4. For the third case in the famous *Steelworkers'* trilogy, *see United States Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The Second Circuit has applied the standard set in the *Steelworkers'* trilogy, stating:

> Only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. *Strauss v. Silvercup Bakers*, 353 F.2d 555, 557 (2d Cir. 1965). *See also*

*Publishers Association of New York City v. New York Mailers Union No. 6*, 317 F.2d 624 (2d Cir. 1963).

5. *Supra*, nn. 1 and 2.

6. Plaintiff has stated that there have been arrearages in payments to the welfare fund, while defendant has denied the allegation. Although it is not within the province of this court to pass on the merits of the allegation, it is clear that a dispute does exist.

tion in the City Court of Buffalo on December 12, 1973, charging one of defendant's officers with a violation of § 198–c of the New York State Labor Law,[7] and through plaintiff's filing an unfair labor practice charge with the National Labor Relations Board on April 18, 1974.[8] The court finds no merit to defendant's argument that plaintiff has waived arbitration. Only one circuit court of appeals has found that a union's action in bringing suit in a federal district court against their employer for back wages, instead of seeking arbitration, was a waiver of the union's right to compel arbitration. *Morales Rivera v. Sea Land of Puerto Rico, Inc.*, 418 F.2d 725 (1st Cir. 1969). However, the *Morales Rivera* case differs from the instant case in that the union had decided to file suit in the district court instead of compelling arbitration under the collective bargaining agreement. In this case the action in City Court was not brought instead of arbitration. To the contrary, plaintiff had informed defendant of the arrearage at the time the complaint was filed. The action instituted in City Court was not instituted to resolve the merits of the dispute between the par-

ties; nor could it have served that purpose since it was a criminal complaint based upon different issues than those before this court and brought against an individual, Manuel Llop, not the defendant corporation. The criminal court action was brought after plaintiff had informed defendant of its intention to arbitrate the dispute if the amount was not paid to the welfare fund, clearly indicating that the criminal action was not brought in lieu of arbitration. Nor can plaintiff's action in filing a charge with the National Labor Relations Board be construed as a waiver of their contract rights to arbitration, *Glass Bottle Blowers Association of the United States and Canada, AFL–CIO, et al. v. Arkansas Glass Container Corp.*, 183 F. Supp. 829, 830–31 (E.D.Ark.1960), especially since the N.L.R.B. dismissed the charge because defendant's remedy was deemed to be under the contract provision for arbitration.[9]

Therefore, since it appears from the record that there is a valid collective bargaining agreement between the parties which provides for arbitration of the present dispute, summary judgment

7. N. Y. Labor Law § 198–c (McKinney's Supp.1975) states:

1. In addition to any other penalty or punishment otherwise prescribed by law, any employer who is party to an agreement to pay or provide benefits or wage supplements to employees or to a third party or fund for the benefit of employees and who fails, neglects or refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within thirty days after such payments are required to be made, shall be guilty of a misdemeanor, and upon conviction shall be punished as provided in section one hundred ninety-eight-a of this article. Where such employer is a corporation, the president, secretary, treasurer or officers exercising corresponding functions shall each be guilty of a misdemeanor.

2. As used in this section, the term "benefits or wage supplements" includes, but is not limited to, reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay.

This charge was dismissed on February 24, 1974 because the court felt that plaintiff

should seek other means of collecting the monies due.

8. This charge was dismissed on May 24, 1974.

9. The reasons for the dismissal of the unfair labor charge by the National Labor Relations Board, similar to the reasons of the City Court judge, did not go to the merits. According to a letter of the National Labor Relations Board dated May 24, 1974, the reasons for dismissal were as follows:

As a result of the investigation, it does not appear that further proceedings on the charge are warranted inasmuch as the investigation revealed that all employees represented by the Charging Party were terminated more than eight months ago as the Respondent closed its business for economic reasons. Furthermore, there was no successor to take over and honor the collective bargaining agreement negotiated on behalf of the predecessor. It is also noted that the Union's remedy for an enforcement of a contract in the circumstances herein is not within the jurisdiction of this Agency. I am, therefore, refusing to issue complaint in this matter.

is granted for the plaintiff against the defendant directing the defendant to submit to arbitration. Plaintiff shall prepare judgment and present it to the court after notice to defendant.

So ordered.