625 F.2d 171
 104 L.R.R.M. (BNA) 3096, 89 Lab.Cas. P 12,127
 CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND;
Central States, Southeast and Southwest Areas
Health & Welfare Fund; and Daniel J.
Shannon, Plaintiffs-Appellants,
v.
HOWARD MARTIN, INC., Defendant-Appellee.
 No. 79-2086.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 28, 1980.
Decided July 9, 1980.
 
 Frederick W. Dennerline, III, Indianapolis, Ind., for plaintiffs-appellants.
 David E. Jerome, Northville, Mich., for defendant-appellee.
 Before PELL, Circuit Judge, MARKEY, Chief Judge,* and SPRECHER, Circuit Judge.
 MARKEY, Chief Judge.
 
 
 1
 Central States, Southeast and Southwest Areas Pension Fund, Central States, Southeast and Southwest Areas Health and Welfare Fund (Funds) and Daniel Shannon, executive director of the Funds at the time of this action, appeal the decision of United States District Court Judge James E. Noland granting Howard Martin Incorporated's (Martin) motion to dismiss the complaint for lack of subject matter jurisdiction. We affirm.
 
 BACKGROUND
 
 2
 The Funds filed a collection suit against Martin seeking monies claimed to be owed under the terms of a collective bargaining agreement (contract)[1] in effect between Martin and Local Union 428, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union) when the controversy arose. Martin moved the court to dismiss, alleging absence of subject matter jurisdiction, and citing arbitration provisions in the contract.
 
 
 3
 Articles 60 and 61 of the contract provide that Martin will pay a dollar amount per week into a fund, managed by independent parties (the Funds in this case), for health, welfare, and pension benefits for "each regular or extra employee, even though such employee may work only part-time under the provisions of this Agreement. . . . ." Those articles also contain this limitation: "Employees who work either temporarily or in cases of emergency under the terms of this Agreement shall not be covered by the provisions of this paragraph." Martin's position below was that the quoted language is open to dispute as to which workers are covered by the contract.[2] The Funds did not contest that allegation.
 
 
 4
 Martin based its motion to dismiss upon Article 8 of the contract, which requires that all grievances or questions of interpretation be referred to arbitration before legal action is commenced. Martin characterized the dispute as one of contract interpretation, that is, who is covered, and moved the court to dismiss the action or stay the proceedings and order the Funds to seek arbitration.
 
 
 5
 The Funds argued that the suit was a delinquency suit, which under Articles 60 and 61 may be brought by the Funds without prior arbitration.[3]
 
 
 6
 Judge Noland, holding that the dispute arose "out of an interpretation of the contract language," and that the arbitration clause of the contract was "clearly broad enough to encompass this dispute," ordered the Funds to submit the dispute to arbitration and dismissed the complaint without prejudice.
 
 OPINION
 
 7
 The Funds, in arguing that they are not required to arbitrate collection claims, misapprehend the matter at issue.
 
 
 8
 Judge Noland did not, nor do we, hold that collection suits must first be submitted to arbitration. Judge Noland correctly held that the facts in this case "clearly indicate a dispute arising out of an interpretation of the contract language that established the duty of the defendant-employer to contribute to the plaintiff funds. The grievance/arbitration clause of the collective bargaining (sic) is clearly broad enough to encompass this dispute by requiring submission of all grievances and questions of interpretation of the contract to the grievance/arbitration process," (emphasis in original).
 
 
 9
 We agree with the Funds, as does Martin, that the Funds are not required to arbitrate disputes over delinquent payments. However, Judge Noland was correct in finding that this is not a simple collection case, but a case turning on which, if any, of the disputed workers were covered by the contract. Until that question is resolved, it is impossible to determine whether there is any delinquency on which to base a collection action under Articles 60 and 61. The parties to the contract clearly intended, as reflected in their inclusion of Article 8, that such questions of contract interpretation be resolved by arbitration.
 
 
 10
 The Funds point out that they are not typical third-party beneficiaries of the contract and should not be required to arbitrate, citing Lewis v. Benedict Coal Corp., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), in which the Court held that a contract establishing a worker welfare and retirement plan was not a typical third-party beneficiary contract, Id. at 468, 80 S.Ct. at 494. In Lewis, however, the employer's liability for payments to the fund was conceded, the case dealt with the employer's claimed right to withhold payments in set-off of damages, and no arbitration clause was present in the contract or discussed by the court. Whether the Funds' special third party status would require a specific provision entitling an employer to set-off payments admittedly owed is irrelevant here, where the existence of the obligation to make certain payments depends upon interpretation of the contract and the contract specifically requires arbitration on questions of interpretation. The fact of delinquency was, as in Lewis, established in the other prior decisions cited by the Funds.
 
 
 11
 Lastly, the Funds say they have no access to the arbitration process because Article 7 of the contract provides that arbitration may be invoked "only by the authorized Union representative or by the employer." The argument falls of its own weight, however. To trigger the arbitration process, the Funds need only inform the Union, the members of which the Funds exist to serve, that Martin disputes the coverage of certain workers and ask the Union, the organization of primary interest, to file a grievance against Martin.[4]
 
 CONCLUSION
 
 12
 Judge Noland's judgment, ordering the case dismissed without prejudice pending the outcome of arbitration proceedings between the parties, is affirmed.
 
 
 
 *
 Chief Judge Howard T. Markey of the United States Court of Customs and Patent Appeals sitting by designation
 
 
 [1]
 National Master Freight Agreement and Central States Area Iron and Steel and Special Commodity Rider
 
 
 [2]
 We need not and do not reach Martin's assertion that the period of its obligation is also open to dispute
 
 
 [3]
 Articles 60 and 61 provide, in pertinent part: "Action on delinquent contributions may be instituted by either the Local Union, the Area Conference, or the Trustees (Funds)."
 
 
 [4]
 The Funds' assertion that public policy requires prompt action to collect pension fund delinquencies is true, but irrelevant here, where the existence of delinquencies, or of a basis for determination of their existence and amount, must await arbitration. The contract calls for prompt and specific action with respect to questions of contract interpretation and grievances, and the arbitration process may in many, if not most, instances produce resolution more promptly than a rush to crowded courtrooms