**TRUSTEES OF NATIONAL BENEFIT FUND FOR HOSPITAL AND HEALTH CARE EMPLOYEES, Appellants,**

v.

**CONSTANT CARE COMMUNITY HEALTH CENTER, INCORPORATED, Appellee.**

No. 81–1318.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1981.

Decided Jan. 28, 1982.

Bernard W. Rubenstein, Baltimore, Md. (Carl S. Yaller, Edelman & Rubenstein, P.A., Baltimore, Md., on brief), for appellants.

Russell H. Gardner, Baltimore, Md. (Jeanne M. Phelan, Wolf, Pokempner & Hillman, Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge, and BUTZNER, Circuit Judge.

WINTER, Chief Judge:

The Trustees of National Benefit Fund for Hospital and Health Care Employees sued defendant, a provider of health care services, to collect delinquent payments owed the fund which they administer. The district court dismissed the complaint without prejudice, ruling that plaintiffs must resort to arbitration as provided in the collective bargaining agreement between defendant and the union before seeking judicial relief. Although mindful of the strong federal policy to encourage and enforce arbitration agreements, we see no justification for requiring arbitration under the facts of this case. We therefore reverse the dismissal of the complaint and remand the case to the district court for adjudication on the merits.

## I.

Defendant was a party to three successive collective bargaining agreements with the union for the period November 15, 1975 to December 31, 1980 which obligated defendant to pay to the fund given percentages of its gross payroll for its nonprobationary employees. Plaintiffs were not parties to the collective bargaining agreements, but they were third-party beneficiaries. These contracts called for payments to be made to plaintiffs at the rate of 8½ percent, effective November 1, 1976, and 10 percent, effective January 1, 1977. Plaintiffs claim that defendant only made payments at the rate of 7 percent which was the prescribed rate prior to November 1, 1972, so that, by January 1979, defendant had allegedly underpaid in the aggregate amount of $24,870.13. Plaintiffs sued to collect this sum.

The collective bargaining agreements included grievance and arbitration clauses. By Article 12, a two-step grievance procedure to settle the grievance of employees was established consisting of a settlement proceeding between an employee and his delegate and the employee's supervisor and department head or his designee (Step 1), with a right of appeal to the administrator and associate director for administration or their designee (Step 2). The agreement then provided:

### Article 13

*Section 13.1—Appeal Procedure*: Any grievance concerning the interpretation, application or alleged breach of any specific provision of this Agreement that has been properly processed through the grievance procedure as set forth in Article 12 and has not been settled at the conclusion thereof may be appealed to arbitration by the Union by serving written notice on the Center within fifteen (15) calendar days after the Center's answer to step 2 of the grievance procedure. If the Union fails to serve such notice of its intention to arbitrate within this time limitation, it shall be deemed to have waived the arbitration and the grievance shall be considered settled. . . .

. . . .

*Section 13.4—Arbitrator's Jurisdiction*: . . . . The award in writing of the arbitrator within his/her jurisdiction and authority as specified in this Agreement shall be final and binding on the aggrieved employee(s), the Union, and the Center.

Defendant moved for summary judgment pleading these contractual provisions and contending that plaintiffs, although they were not "employees" as defined in the agreements, must resort to arbitration before bringing suit. It is significant that defendant did not assert that there was any substantive or meritorious defense to payment of the amounts alleged to be owed by it, other than the purely procedural one, which might be the subject of arbitration. Although pressed during oral argument to tell us what factual defense it considered to be arbitrable, defendant could point only to the limitations period set forth in the arbitration provisions of the collective bargaining agreements.

The district court ruled that the dispute between the parties fell within the arbitration provision of the collective bargaining agreement and therefore judicial intervention was barred until arbitration had taken place. Accordingly, it granted summary judgment for defendant, dismissing the complaint without prejudice.

## II.

We are, of course, acutely conscious of the *Steelworkers Trilogy, see United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and the strong public policy favoring labor arbitration which it articulated. But we think that that policy does not justify arbitration here.

First, we note that plaintiffs are not parties to the collective bargaining agree-

ments, although they are third-party beneficiaries of the provisions which require the defendant to contribute to the employees' benefit fund. Two cases have held that a union's failure to arbitrate is no bar to a suit by trustees of an independent fund seeking to recover employer contributions due under the terms of a collective bargaining agreement. *See Wishnick v. One Stop Food & Liquor Store, Inc.*, 359 F.Supp. 239 (N.D.Ill.1973); *Owen v. One Stop Food & Liquor Store, Inc.*, 359 F.Supp. 243 (N.D.Ill. 1973). Their reasoning was that the trustees are not parties to the agreement and "not subject to each and every duty" created by the agreement, unless the agreement specifically requires "the Trustees to submit their claim to the arbitration procedure." 359 F.Supp. at 243. *Accord Todd v. Casemakers, Inc.*, 425 F.Supp. 1375 (N.D.Ill. 1977); *see Boyle v. North Atlantic Coal Corp.*, 331 F.Supp. 1107 (W.D.Pa.1971). *See also California Trucking Association v. Corcoran*, 74 F.R.D. 534, 545 (N.D.Cal.1977) (dictum); *Huge v. Overly*, 445 F.Supp. 946 (W.D.Pa.1978).

The contrary was held in *IBEW Local No. 308 v. Dave's Electric Service, Inc.*, 382 F.Supp. 427 (M.D.Fla.1974). There, with strong reliance on the *Steelworkers Trilogy*, the court took the view that the efficiency of arbitration procedures and the special expertise of arbitrators make the arbitration of disputes concerning contributions between benefit funds and employers highly desirable as a matter of policy. *Id.* at 431. *Cf. Local No. 55, United Automobile, Aerospace & Agricultural Implement Workers*, 396 F.Supp. 667 (W.D.N.Y.1975) (in which a union, rather than trustees, sought to enforce the employer's obligation to contribute to the fund).

We see no need to choose between these two lines of authority in the instant case. Even though the trustees may not be parties to a collective bargaining agreement, there are situations in which arbitration may well be a prerequisite to a suit for enforcement of contributions. *Central States, Southeast and Southwest Area Pension Fund v. Howard Martin, Inc.*, 625 F.2d 171 (7 Cir. 1980), is a case in which arbitra-

tion served a useful purpose. We think, moreover, that it points to the correct disposition of the present appeal.

In *Howard Martin*, the court affirmed a decision of the district court (Noland, D.J.) requiring benefit funds seeking to recover delinquent contributions to resort to arbitration under a collective bargaining contract as a prerequisite to bringing suit. In that case the employer was required to make contributions with respect to regular or extra employees, including employees who worked only part-time, but *excluding* employees who worked temporarily or in cases of an emergency. The employer contested the proper classification of certain employees under this formula. In affirming, the court was careful to peg its decision on the fact that there existed a genuine dispute as to the meaning of the contract which required the payments:

> Judge Noland did not, nor do we, hold that collection suits must first be submitted to arbitration. Judge Noland correctly held that the facts in this case "clearly indicate a dispute arising out of an interpretation of the contract [and that the arbitration clause encompassed the dispute]."
>
> We agree with the Funds ... that the Funds are not required to arbitrate disputes over delinquent payments. However, Judge Noland was correct in finding that this is not a simple collection case....

625 F.2d at 172.

As the quoted passage from *Howard Martin* discloses, the rationale of that decision was that the case was not a simple collection matter; rather, there was an underlying question of contractual interpretation warranting arbitration which was a prerequisite to collection. In contrast, the case at bar is a simple collection case. Defendant did not plead any affirmative defense to the complaint. It immediately sought summary judgment on the basis of the asserted procedural defense that arbitration was a prerequisite to judicial relief. Despite our requests during argument for

216

tender of any substantive defense available to defendant, we were told only that defendant would claim that arbitration was not sought within the contractual period of limitations therefor. That is manifestly not an issue requiring resolution as a prerequisite to collection of delinquent payments. As we see it, there is nothing for an arbitrator to decide.

We therefore hold that, under the facts here, arbitration is not a prerequisite to maintaining the lawsuit. We reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.