721 F.2d 451
 114 L.R.R.M. (BNA) 3401, 99 Lab.Cas. P 10,563,
4 Employee Benefits Ca 2634
 TRUSTEES OF the LOCAL 478 TRUCKING AND ALLIED INDUSTRIES
PENSION FUND, and The Joint Welfare Fund of
Employers and Local 478, International
Brotherhood of Teamsters,
Plaintiffs-Appellants,
v.
SIEMENS CORP., Defendant-Appellee and Third-Party Plaintiff,
v.
LOCAL 478, INTERNATIONAL BROTHERHOOD OF TEAMSTERS and Joseph
P. Uzzolino, President of said Local Union, and
Joseph A. Uzzolino, Business Agent of
said Local Union, Third-Party
Defendants.
 No. 82-5719.
 United States Court of Appeals,
Third Circuit.
 Argued June 7, 1983.
Decided Nov. 18, 1983.
 
 John A. Craner, Stephen A. Satkin (argued), Mountainside, N.J., Robert J. Preminger, Craner & Nelson, P.A., Perth Amboy, N.J., for plaintiffs-appellants.
 Marvin M. Goldstein (argued), Donald B. Shanin, Grotta, Glassman & Hoffman, P.A., Roseland, N.J., for defendant-appellee and third-party plaintiff.
 Before SEITZ, Chief Judge, SLOVITER, Circuit Judge and POLLAK, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 The issue on appeal is whether trustees of a pension fund (Trustees) who contend the employer failed to contribute to the fund as required by the collective bargaining agreement may maintain a court action despite an arbitration clause in that agreement. The district court dismissed the Trustees' action for lack of subject-matter jurisdiction, holding that the Trustees' contention must be raised in arbitration, a proceeding which can be instituted against the employer only at the discretion of the union. We reverse, grounding our decision on policy considerations as well as our interpretation of the relevant agreements at issue.
 
 I.
 
 2
 Plaintiffs are Trustees of the Local 478 Trucking and Allied Industries Pension Fund ("Pension Fund" or "Fund"), a multi-employer employee benefit plan within the meaning of section 302(c)(5) of the Labor-Management Relations Act (LMRA), 29 U.S.C. Sec. 186(c)(5) (1976 & Supp. V 1981) and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1002(1-3) (1976 & Supp. V 1981). Defendant Siemens Corporation ("Siemens"), although not a trucking-industry employer and hence not a party to the National Master Freight Agreement or the Local 478 Rider to it, has a single-employer bargaining relationship with Local 478. Through the Siemens-Local 478 collective bargaining agreement, Siemens undertook to participate in the Fund. Therefore, it executed an Agreement and Declaration of Trust (the Trust Agreement) defining its participation.
 
 
 3
 Under the Trust Agreement, Siemens must contribute to the Fund "the amount required by the Collective Bargaining Agreements in effect" between Local 478 and Siemens. The collective bargaining agreement in effect from April 1, 1981 to March 31, 1984 requires that Siemens pay the full cost of Pension Fund contributions for its employees. The agreement further provides that "in the event the Trucking Industry Employers who have Labor Contract [sic] with the Union increase their contributions for each of their employees to the Pension Fund, during the term of this Contract, [Siemens] will increase its contributions accordingly, for each employee."In 1981, pursuant to the collective bargaining agreement, Siemens increased its employees' wages by $.70 per hour and its contributions to the Pension Fund by $.15 per hour. At the same time, the Union-Trucking Industry Committee negotiated a cost-of-living wage increase of $.42 per hour to be paid by the trucking industry employers. The membership of Local 478 voted to apply $.21 of its cost-of-living increase to the pension fund contribution effective April 1, 1981. The administrator of the Fund thereafter requested all of the Fund's participating employers, including Siemens, to make such a contribution, even though the Siemens-Local 478 collective bargaining agreement does not specifically provide for a cost-of-living adjustment. This would require an increase by Siemens of $.21 in pension contributions over and above the $.15 directly negotiated.
 
 
 4
 Siemens denied that its collective bargaining agreement obligated it to pay any pension fund increase stemming from a cost-of-living increase, but offered to divert $.21 of the $.70 negotiated wage increase to the pension fund. Local 478 declined, but has pressed no grievance with Siemens over the interpretation of the collective bargaining agreement.
 
 
 5
 The Trustees filed suit against Siemens in New Jersey state court seeking the contributions they alleged were due. Siemens removed the action to the United States District Court on the basis of federal jurisdiction under Sec. 301(a) of the LMRA, 29 U.S.C. Sec. 185(a) (1976), and Sec. 502 of ERISA, 29 U.S.C. Sec. 1132(a) (1976). On removal, Siemens filed a third-party complaint against Local 478 for a declaratory judgment and monetary relief in the event Siemens is held liable to the Fund. Siemens also filed a motion to dismiss the complaint and argued that the issue fell within the compulsory arbitration clause of the collective bargaining agreement. The Trustees contended that clause was inapplicable. The district court agreed with Siemens. It entered an order dismissing the complaint and stated from the bench, "I think that both sides have very persuasive arguments, and require this matter to be brought to arbitration. In other words, the trustee should ask the union to bring it to a grievance and arbitration stage." The Trustees appeal.[1]
 
 II.
 
 6
 The issue before us is difficult because it requires us to choose between the competing policies of protecting the integrity of pension funds and of favoring arbitration as a mechanism to resolve disputes. Three circuits have recently considered this issue. Two circuits, the Fifth and the Eighth, have held that trustees are not bound by the arbitration clause. Bugher v. Consolidated X-Ray Service, 705 F.2d 1426, 1430 (5th Cir.1983), petition for cert. filed, --- U.S. ----, 104 S.Ct. ----, 77 L.Ed.2d ---, 52 U.S.L.W. 3191 (Sept. 20, 1983); Robbins v. Prosser's Moving and Storage Co., 700 F.2d 433, 442-43 & n. 8 (8th Cir.1983) (in banc), cert. granted, --- U.S. ----, 104 S.Ct. 66, 77 L.Ed.2d --- (1983). The Seventh Circuit, construing a somewhat broader arbitration clause, held to the contrary. Central States, Southeast and Southwest Areas Pension Fund v. Howard Martin, Inc., 625 F.2d 171, 172 (7th Cir.1980); see also Trustees of National Benefit Fund for Hospital and Health Care Employees v. Constant Care Community Health Center, Inc., 669 F.2d 213, 215 (4th Cir.1982) (dictum).
 
 A.
 
 7
 The strong national policy favoring arbitration of labor disputes has led the Supreme Court to establish a strong presumption in favor of arbitration through broad interpretation of arbitration clauses. Nolde Brothers, Inc. v. Local 358, Bakery & Confectionery Workers, 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977); Steelworkers Trilogy: United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960). Nevertheless, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. at 582, 80 S.Ct. at 1353; Eberle Tanning Co. v. Section 63L, 682 F.2d 430, 433 (3d Cir.1982).
 
 
 8
 The language of the arbitration clause in the Siemens-Local 478 collective bargaining agreement does not explicitly require arbitration of the Trustees' complaint. The arbitration clause does not mention the Fund, the Trustees, or pension disputes. It provides:
 
 
 9
 Should any dispute arise between the Employer and an employee, or the Employer and the Union, concerning the application or interpretation of any provision of this Contract, the Representatives of the Employer and of the Union shall attempt to adjust the controversy between themselves. In the event they are unable to adjust same, the dispute shall within two (2) days after the request of either party, be submitted to ... Arbitration. The Arbitrator's decision shall be final and binding upon the parties hereto ...
 
 
 10
 (emphasis added). It is agreed by the parties that resolution of the dispute between the Trustees and Siemens will depend upon the "interpretation of [a] provision of [the collective bargaining] Contract."[2] Siemens contends that the Trustees, though not parties to its collective bargaining agreement with Local 478, are nonetheless bound by that agreement. If Siemens is correct, then the Trustees, who cannot invoke arbitration, can raise their dispute with Siemens only through the union in arbitration.
 
 
 11
 However, the separate Trust Agreement between Siemens and the Trustees specifically provides that the Trustees may bring suit in certain circumstances:
 
 
 12
 The failure of any Employer to pay the contributions required hereunder promptly, when due, in accordance with the Collective Bargaining Agreement, or rules and regulations adopted by the Trustees, shall be a violation of such Employer's obligations hereunder .... The Trustees may take any action necessary to enforce payment of the contributions due hereunder, together with said penalty, interest, attorneys' fees, court costs and accountant's charges, as provided hereunder, either by proceedings at law or in equity.
 
 
 13
 (emphasis added).
 
 
 14
 Siemens construes this language in the Trust Agreement to permit direct legal action by the Trustees only in "simple collection cases" for delinquent contributions. It contends that where, as here, the dispute concerns a contested interpretation of the bargaining agreement, then the governing provision is the arbitration clause of the collective bargaining agreement.
 
 
 15
 Applying standard contract interpretation principles, it is difficult to accept Siemens' argument. The Trustees are parties only to the Trust Agreement. There is no explicit provision in that contract which limits the Trustees' right to bring suit to enforce the employer's obligation to the Fund's beneficiaries. Ergo, no such limitation should be imposed by the courts.
 
 
 16
 Even if we must refer to the collective bargaining contract, to which the Trustees are not parties, arbitration under it is required only as to disputes "between the Employer and an employee, or the Employer and the Union." The dispute at issue is not between those parties. Courts confronted with similar provisions have held that arbitration was not required. See Bugher v. Consolidated X-Ray Service, 705 F.2d at 1430; Robbins v. Prosser's Moving and Storage, 700 F.2d at 442-43 & n. 8.[3]
 
 
 17
 Nor is it determinative that the interests of the Fund and its participants derive from their status as third-party beneficiaries of the collective bargaining contract. As the Supreme Court held in Lewis v. Benedict Coal Corp., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), the employer's liability to the Fund, which was a third-party beneficiary of the bargaining agreement, cannot be reduced or offset by damages for the union's breach of that bargaining agreement.[4] The Court held that unless the "parties to a collective bargaining agreement ... express their meaning in unequivocal words" a union's breach of promise to an employer is no defense to "the duty assumed by an employer to contribute to a welfare fund meeting the requirements of Sec. 302(c)(5) [of the LMRA]." Id. at 470-71, 80 S.Ct. at 495-96.
 
 B.
 
 18
 Rather than rest our decision on contract interpretation alone, we must also consider national labor policy. As Justice Brennan stated in Lewis, a "collective bargaining agreement ... is not a typical third-party beneficiary contract." 361 U.S. at 468, 80 S.Ct. at 495.
 
 
 19
 The relevant national policy is the preservation of the independence and integrity of pension funds in order to protect the security of retired workers and their families. Although the interests of current and former workers often may be congruent, there are potential conflicts between members of the active work force, represented by the unions, and beneficiaries of pension plans, represented by the Trustees.
 
 
 20
 In Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), the Supreme Court referred to "the potential for severe internal conflicts" which might occur were retirees and current workers included in the same bargaining unit. Id. at 173, 92 S.Ct. at 394. In holding that retirees' benefits are not a mandatory subject of bargaining, the Court stated, "Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment." Id. The Court also recognized that in bargaining, the union may prefer the current demands of employees over those of the retirees. It stated, "[T]he risk cannot be overlooked that union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits." Id. (footnote omitted). More recently in United Mine Workers Health & Retirement Funds v. Robinson, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), the Court again emphasized that "former members and their families may suffer from discrimination ... because the union need not 'affirmatively ... represent [them] or ... take into account their interests in making bona fide economic decisions in behalf of those whom it does represent.' " Id. at 574, 102 S.Ct. at 1233 (quoting Pittsburgh Plate Glass, 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20).
 
 
 21
 In recognition of the potential conflict as well as the risk that pension funds "might be diverted to other union purposes or even to the private benefit of faithless union leaders," id. at 572, 102 S.Ct. at 1232. Congress required that administration of employee benefit funds be kept independent of union as well as employer control. Section 302 of the LMRA, 29 U.S.C. Sec. 186, permits employers to make payments to representatives of employees only under very limited circumstances, such as the one relevant here, when such payments are for providing pensions or annuities for employees and "are made to a separate trust which provides that funds held therein cannot be used for any purpose other than paying such pensions or annuities." There must be a detailed written agreement between the union and the employer which lays out the bases for all payments, the fund must be subject to an annual audit available to interested persons, and pension or annuity funds must be kept in a trust separate from other union welfare funds. 29 U.S.C. Sec. 186(c)(5)(A), (B), (C).
 
 
 22
 In NLRB v. Amax Coal Co., 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), the Court reviewed at some length the purpose behind such separation. It stated: "The debates on Sec. 302(c)(5) further reveal Congress' intent to cast employee benefit plans in traditional trust form precisely because fiduciary standards long established in equity would best protect employee beneficiaries." Id. at 331, 101 S.Ct. at 2795. The Court concluded, "In sum, the duty of the management-appointed trustee of an employee benefit fund under Sec. 302(c)(5) is directly antithetical to that of an agent of the appointing party." Id. at 331-32, 101 S.Ct. at 2795. The same is obviously true with regard to a union-appointed trustee.
 
 
 23
 In contrast to the union, the trustees of a pension fund owe their primary duty to the integrity of the fund and to its beneficiaries. ERISA has adopted the strict fiduciary obligations at common law as the trustee's standard of behavior for a Sec. 302(c)(5) fund. Section 404(a)(1) of ERISA, 29 U.S.C. Sec. 1104(a)(1) (1976 & Supp. IV 1980), requires a trustee to "discharge his duties ... solely in the interest of the participants and beneficiaries." Section 406(b)(2), 29 U.S.C. Sec. 1106(b)(2) (1976), provides that a trustee may not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries."
 
 
 24
 The Court has described the common-law duties codified by ERISA as follows: "[A] trustee bears an unwavering duty of complete loyalty to the beneficiary of the trust, to the exclusion of the interests of all other parties [citations omitted]. To deter the trustee from all temptation and to prevent any possible injury to the beneficiary, the rule against a trustee dividing his loyalties must be enforced with 'uncompromising rigidity.' Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (Cardozo, C.J.)." NLRB v. Amax Coal Co., 453 U.S. at 329-30, 101 S.Ct. at 2794. The Court suggested the trustees' fiduciary obligation is not diminished because they "operate under a detailed written agreement, 29 U.S.C. Sec. 186(c)(5)(B), which is itself the product of bargaining between the representatives of the employees and those of the employer. Indeed, the trustees have an obligation to enforce the terms of the collective-bargaining agreement regarding employee fund contributions against the employer 'for the sole benefit of the beneficiaries of the fund.' " Id. at 336-37, 101 S.Ct. at 2798 (emphasis added) (footnote omitted) (quoting United States v. Carter, 353 U.S. 210, 220, 77 S.Ct. 793, 798, 1 L.Ed.2d 776).
 
 
 25
 In Rosen v. Hotel and Restaurant Employees & Bartenders, 637 F.2d 592 (3d Cir.1981), cert. denied, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1982), this court also held that the trustees of a pension fund were required to take necessary action, including litigation, to safeguard a future beneficiary's credited service. Relying both on common-law obligations and on ERISA, we stated that "defendants' status as fiduciaries requires them to take action against employers who fail to contribute to the fund as required by the plan. This obligation could require the trustees to commence suit, or to picket the non-contributing employer; but some action must be taken...." Id. at 600.
 
 
 26
 In light of congressional unwillingness to leave administration of pension funds to the union, the potential conflict of interest between the union's constituency and the fund's beneficiaries, and judicial reaffirmation that trustees are obliged to institute litigation to satisfy their fiduciary obligations to the beneficiaries, we see no reason to read the arbitration clause here to limit the Trustees' access to the courts. See Robbins v. Prosser's Moving and Storage Co., 700 F.2d at 441.[5]
 
 C.
 
 27
 Chief Judge Seitz, in his concurring opinion, suggests that the Trustees should be free to initiate their own action only where a conflict of interest makes it unlikely that the union will arbitrate the Trustees' claim in good faith. We share the Chief Judge's reluctance to widen federal trial court jurisdiction at the expense of the valuable processes of arbitration. We believe it is preferable to follow the "bright line" approach established here for a number of reasons. First, the other approach would create an ancillary issue of the union's ability to arbitrate in good faith in every suit brought by the Trustees, making the union a necessary, if not indispensable, party to every Trustees' suit. The preliminary inquiry into the existence of actual or potential conflict between the trustees and the union would generate more trial court activity than it would abate and would, in many instances, be more extended and complex than resolution of the merits of the employer's asserted obligation to the pension fund. Second, the issue of good faith would be, by its very nature, divisive and would unnecessarily pit the Trustees and the union as opponents. Third, proof of the ability to arbitrate in good faith may often be speculative and difficult, leaving the trust beneficiaries inadequately protected against those conflicts of interest that may be subtle, or as yet unrevealed. For these reasons, we have opted for a generally applicable rule under which the litigation would be limited to the relevant issue of the company's obligation to make the payment.
 
 
 28
 We do not decide whether the union may, at the request of the Trustees, take the Trustees' claim to arbitration.[6] Indeed, we do not decide, because it is not before us, whether the Trustees could be compelled to resort to arbitration through the union if the underlying agreements were explicit in that regard.[7]
 
 
 29
 In this case, it appears that the unions position in arbitration would be awkward, if not untenable. Siemens has offered to divert money from wages to the pension fund and has cross-claimed against the union to this effect. The union, recipient of a general wage increase, refused the offer which might have satisfied the Trustees and beneficiaries and has not pressed a grievance against Siemens. Although the unions position with regard to the Trustees suit is unclear, the unions failure to press a grievance may well have been inevitably influenced by its natural concern that present employees not "lose" wages in order to fund pensions.
 
 
 30
 In this situation, we find unpersuasive the Seventh Circuits suggestion that the Fund "need only inform the Union, the members of which the Funds exist to serve" of the dispute and "ask the Union, the organization of primary interest, to file a grievance." Howard Martin, Inc., 625 F.2d at 173. Instead, we agree with the Fifth Circuit's statement in Bugher:
 
 
 31
 To compel the Trustees to follow those procedures would place the Union in control of whether payment should in fact be demanded, in what amount, and from which employers. By carelessness or deliberate refusal to act, the Union could completely thwart the Trustees' ability to administer and ensure payments to the trust funds. Though in full possession of their fiduciary duties, the Trustees could exercise their fiduciary powers only at the Union's discretion. Such a situation would completely violate the Congressional directive that control of fringe benefit funds shall not rest with the unions.
 
 
 32
 705 F.2d at 1432.
 
 III.
 
 33
 In conclusion, relying both on our interpretation of the contracts and the prevailing policy considerations, we will reverse the order of the district court dismissing the action, and remand for further proceedings.
 
 SEITZ, Chief Judge, concurring:
 
 34
 I agree with the majority that under the circumstances of this case the Trustees may file suit to attempt to collect the increased contribution despite the existence of the arbitration provision. I write separately, however, because in my view permitting the trustees to sue independently is not the inevitable result in a situation where contributions are provided for in a collective bargaining agreement containing an arbitration clause, and a trust agreement gives the trustees the right to sue for delinquent contributions. Rather, I believe that only where a conflict of interest makes it unlikely that the trustees' claim to increased contributions will be arbitrated in good faith are they free to initiate their action in the courts in the first instance.
 
 
 35
 The dispute in this case is over the provision in the collective bargaining agreement governing contributions, and how that provision is to be read in light of the accompanying rider in which the Employer pledged to match contribution increases by other industry employers. Whether a collective bargaining agreement binds an employer to pay given wages or benefits is a classic example of an arbitrable issue. Congress has already determined that disputes arising under a collective bargaining agreement containing an arbitration clause ordinarily must go to arbitration. The importance of this policy has been repeatedly confirmed by the Supreme Court. United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
 
 
 36
 The policy of arbitration, however, is not paramount in every instance. Where it would be futile for a party to request that a union arbitrate his grievance against an employer, the existence of the arbitration clause will be no defense to a suit filed in the district court. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976); Vaca v. Sipes, 386 U.S. 171, 184-87, 87 S.Ct. 903, 913-15, 17 L.Ed.2d 842 (1967); Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International, 370 U.S. 254, 261-63, 82 S.Ct. 1346, 1350-51, 8 L.Ed.2d 474 (1962). One example of a situation where arbitration is excused is where a conflict of interest exists between the party seeking relief and the union arbitrating his claim, because of the possibility that in arbitration the union would work with the party's employer to defeat his claim. Cf. Hiller v. Liquor Salesmen's Union Local No. 2, 338 F.2d 778, 779 (2d Cir.1964).
 
 
 37
 It is clear that in this case there is a conflict of interest between the Union and the Trustees which raises a possibility that the Employer and the Union would agree that the Employer need not pay the increased contribution rather than arbitrate the issue in good faith. The Trustees want the increased pension fund contribution and are indifferent to whether the Employer pays it out of, or in addition to, the wage increase included in the collective bargaining agreement. The Union, seeking to maximize the wages paid its members, opposes having the contribution paid out of the wage increase. In fact, the Union has already refused the Employer's offer to pay the increased contribution out of the wage increase.
 
 
 38
 The Supreme Court has warned of the conflict of interest which arises when a union has control over pension fund contributions, since the union will always have the incentive to trade higher wages for lower contributions. United Mine Workers Health & Retirement Funds v. Robinson, 455 U.S. 562, 574-75, 102 S.Ct. 1226, 1233-34, 71 L.Ed.2d 419 (1982); Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157, 173, 92 S.Ct. 383, 394, 30 L.Ed.2d 341 (1971). The conflict of interest in this case between the Trustees and the Union raises the danger that the Union, considering only its interests rather than those of the Trustees, might agree with the Employer to deny the Trustees' claim to any increased contribution. An award denying the Trustees' claim is clearly the outcome which the Employer would prefer. From the standpoint of the Union, such an award would also be desirable because it would ensure that the wage increase not be reduced in order to fund increased pension contributions.
 
 
 39
 The majority in this case has adopted a rule that, notwithstanding the existence of an arbitration clause and an arbitrable issue, the trustees of a pension fund may sue in the district court for contributions which they believe are owing. This case does not call for the adoption of so broad a rule. I believe that restraint is dictated when attempting to fashion a new body of law to fit in the interstice between two important federal policies, those of promoting resort to arbitration in collective bargaining disputes and of preserving the independence of pension funds. At this juncture the position I espouse, that where a conflict of interest exists the trustees may bring their own suit, protects the purposes of ERISA to the extent required by this case without, as the majority does, carving a broad exception from the policy of promoting arbitration.
 
 
 40
 One implication of the bright-line approach taken by the majority is that the union would not have standing in the trustees' action, either to demonstrate that arbitration would not impugn the trustees' rights under the pension trust or to assert its interest in the subject of the dispute. I believe that the union should have standing to assert either or both of these positions in the trustees' action, and I agree with the majority that my approach would give this right to the union. In my view such a result is required not only by principles of fairness but also in order to accord a proper deference to the arbitration provision of the collective bargaining agreement.
 
 
 41
 My approach would normally dictate that I dissent in a case, such as this one, where the trustees have failed to join the union as a defendant, because the failure to join the union deprives the union of the opportunity to assert in the district court that arbitration would not jeopardize the pension fund's interest. In this case, however, the Union was joined by the Employer as a third-party defendant. Under Rule 14(a) of the Federal Rules of Civil Procedure, the Union could have asserted that the district court lacked subject matter jurisdiction because of the arbitration clause. The Employer actually asserted this, however, and in response the Trustees argued to the district court and in their brief on appeal that the conflict of interest between the Trustees and the Union made arbitration impermissible. The Employer thus raised the same arbitration defense that the Union could have raised. Furthermore, the Trustees argued that the conflict of interest made arbitration impossible, the same response it would have given had it been the Union raising the arbitration defense. Under these circumstances, I conclude that the Union is not prejudiced by my reaching the conflict of interest issue and concluding that the existence of the conflict precludes arbitration of this dispute over the pension fund contribution. While I believe that the rule adopted by the majority is broader than necessary, I concur with the majority that the circumstances of this case justify allowing the Trustees to sue directly.
 
 
 
 *
 Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 No brief has been filed on behalf of Local 478, which was named as a third-party defendant in the action in the district court
 
 
 [2]
 The Trustees argue that the collective bargaining agreement requires Siemens to match industry increases in pension-fund contributions regardless of whether those increases arise under the Local 478 Rider to which Siemens is not a party. Section 23(i) of the Rider provides that contributions will be increased "if the Negotiating Committee of the Local 478 Rider (Union & Management) designates such an increase in accordance with Section 24, Cost of Living." Section 24 states that the Negotiating Committee shall determine "whether to apply such cost-of-living increases to the Health and Welfare or Pension Funds or to the Hourly and Mileage Rates." Here, $.21 of the $.42 cost-of-living increase was allocated by Local 478 to the pension fund. In addition to contending that the collective bargaining agreement does not require Siemens to match increases stemming from a cost-of-living increase, Siemens has contended that its offer to divert $.21 from the negotiated wage increase of $.70 satisfies any requirement in the bargaining agreement of matching pension fund increases
 
 
 [3]
 In Bugher, the bargaining agreement defined a "grievance" (to be arbitrated) as "a dispute arising between the parties to this Agreement or between any employee or employees covered by this Agreement and the Company...." 705 F.2d at 1430 (emphasis by court). A separate clause in the Pension Trust Fund instrument and in the Welfare Trust Fund instrument authorized the trustees to bring suit for delinquent contributions. Id. at 1430-31. As here, neither trust instrument explicitly required the trustees to follow the grievance and arbitration procedures of the collective bargaining agreement before taking legal action. Id. at 1431. The provisions in Robbins were similar. See 700 F.2d at 442-43 & n. 8. In contrast, the arbitration clause construed by the Seventh Circuit in Howard Martin, Inc. was broader, apparently requiring arbitration of "all grievances", a fact stressed by the court. The trustees' action clause, unlike the one here, provided, "Action on delinquent contributions may be instituted by either the Local Union, the Area Conference, or the Trustees." 625 F.2d at 172 n. 3
 
 
 [4]
 In a more recent decision, the Court held that trustees, when suing as third-party beneficiaries, were subject to an illegality defense "in those circumstances where its rejection would be to enforce conduct that the antitrust laws forbid." Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 81-82, 102 S.Ct. 851, 858, 70 L.Ed.2d 833 (1982). The Court distinguished Huge v. Long's Hauling Co., 590 F.2d 457 (3d Cir.1978), cert. denied, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979), where we held the defendant could not interpose an antitrust defense to the trustees' suit, as not involving "a defense based on the illegality of the very promise sought to be enforced." 455 U.S. at 88, 102 S.Ct. at 861
 
 
 [5]
 Albeit in another context, the Supreme Court has recently noted Congress' concern that collection cases brought by ERISA plan trustees have become costly and complex, leading Congress to enact amendments to ERISA in 1980 designed to " 'simplify delinquency collection.' " Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 87, 102 S.Ct. 851, 861, 70 L.Ed.2d 833 (1982). See 29 U.S.C. Sec. 1145 (Supp. V 1981); Senate Comm. on Labor and Human Resources, 96th Cong.2d Sess., S. 1076--The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 44 (Comm. Print 1980); 126 Cong.Rec. 23,039 (1980) (comments of Rep. Thompson, floor sponsor of House companion bill)
 
 
 [6]
 In Pittsburgh Plate Glass, the Court stated that nothing in the opinion precludes the union from bargaining for retirees if the employer agrees. 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20. The issue here is different, implicating a potential conflict between the Trustees and the union. We have held that the district court may compel a reluctant employer to arbitrate a pension issue with the union, see United Steelworkers v. Canron, Inc., 580 F.2d 77, 81-82 (3d Cir.1978); United Rubber, Cork, Linoleum and Plastic Workers v. Lee Rubber & Tire Corp., 394 F.2d 362, 365 (3d Cir.), cert. denied, 393 U.S. 835, 89 S.Ct. 108, 21 L.Ed.2d 105 (1968), but in these cases the interests of the workers, past and present, were allied against the employer
 
 
 [7]
 We also do not decide whether and under what circumstances the Trustees or beneficiaries may seek independent relief from an arbitral award obtained at the behest of the union. We note that in Adams v. Gould, Inc., 687 F.2d 27, 31 (3d Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1777, 76 L.Ed.2d 348 (1983), active employees with vested pensions were held bound to the result of union-employer arbitration. That suit was not filed by the Trustee. On the contrary, the Trustee was named as a defendant